STATE OF CONNECTICUT *v.* JOHN A. McGRAW
(12935)

PETERS, C. J., HEALEY, SHEA, GLASS and COVELLO, Js.

Argued June 2—decision released July 21, 1987

*Michael Sherman,* with whom, on the brief, was *John J. Graubard,* for the appellant (defendant).

*Leah Hawley,* deputy assistant state's attorney, with whom, on the brief, was *Andrew Sherriff,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The sole issue on this appeal is the extent to which the state, in its cross-examination of a defendant's character witness, may refer to a defendant's prior arrest for unrelated misdemeanors. The defendant, John A. McGraw, was charged with one count of burglary in the second degree in violation of General Statutes § 53a-102,[1] and four counts of sexual assault in the first degree in violation of General Statutes § 53a-70.[2] At his first trial, the jury was unable to reach a verdict. The second trial resulted in a conviction on all counts. The defendant appeals from this judgment. We find no error.

---

[1] General Statutes § 53a-102 provides: "BURGLARY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein. . . ."

[2] General Statutes § 53a-70 provides: "SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person. . . ."

The jury could reasonably have found the following facts. On January 1, 1985, the defendant entered the victim's apartment in Wilton, awakened her and sexually assaulted her. The victim knew the defendant because he was her tenant at the time of the assault.

At the trial, the defendant admitted having had sexual relations with the victim. He maintained, however, that the victim had consented to their sexual activity and that the acts in question had taken place in her car and not in her apartment.

The trial court made certain evidentiary rulings that are central to this appeal. These rulings arose in the following circumstances. After the defendant had testified on his own behalf, he offered his brother-in-law, Raymond W. Fitzgerald, as a character witness. On direct examination by counsel for the defendant, the witness testified as follows:

"Q. Are you aware of what [McGraw's] reputation is in the Wilton community?

"A. Yes.

"Q. What is that reputation?

"A. He's a quiet—quiet and more or less kept to himself, honest, good kid. Most of the people in Wilton feel that way, that I know anyway.

\* \* \*

"Q. . . . What's your opinion of John McGraw's character right now?

"A. The same. I still think he's a very well brought up kid, very nice."

At the end of Fitzgerald's direct testimony, the state's attorney, outside the presence of the jury, sought permission from the trial court to ask Fitzgerald whether he knew that the defendant had been arrested for eight counts of forgery in the third degree, a class B mis-

demeanor; General Statutes § 53a-140; and eight counts of illegal use of a credit card, a class A misdemeanor. General Statutes § 53a-128d. Defense counsel objected to this proposed questioning on three grounds. He questioned its probative value, since the allegations concerned an arrest and not a conviction. He questioned its relevance, since the arrest involved was unrelated to the specific charge of sexual assault presently on trial. Finally, he maintained that the prejudicial effect of this evidence would outweigh its probative value. The court ruled, in favor of the state, that the state's attorney was entitled to refer to the defendant's arrest for forgery and illegal use of a credit card in cross-examining Fitzgerald about the basis for his testimony about the defendant's honesty. To minimize the risk of prejudice to the defendant, the court precluded any mention in open court of the number of counts involved in the defendant's arrest. The defendant took proper exception to this ruling.

The state's attorney then cross-examined Fitzgerald as follows:

"Q. Now on direct examination you testified that your brother-in-law had a reputation for being honest?

"A. That's right.

"Q. You wouldn't lie for your brother-in-law, would you?

"A. No.

"Q. You wouldn't lie for your wife, would you?

"A. No.

"Q. When you testified in that manner, were you aware that your brother-in-law had been arrested for forgery in the third degree?

"A. Yes.

"Q. And that doesn't change your testimony . . . . That doesn't change your mind in terms of his reputation for honesty, the fact that he was arrested for forgery in the third degree, does it?

"A. No.

"Q. And when you testified in that manner were you aware that your brother-in-law had been arrested for illegal use of a credit card?

"A. Yes.

"Q. And that doesn't affect his reputation for honesty in your opinion, does it?

"A. No."

The defendant's appeal from his conviction renews the arguments that he made at trial regarding the impropriety of the cross-examination of his character witness concerning his arrest on charges of forgery and illegal use of a credit card. He claims that the trial court erred in permitting this cross-examination because: (1) the state's questions attacked the defendant's credibility and thus should have been raised, if at all, to impeach him when he was testifying, and not to discredit his character witness; (2) the state's evidence did not relate to the specific traits involved in the crime with which he had been charged; and (3) admission of the prior misconduct evidence was more prejudicial than probative. Finally, the defendant asserts that the trial court's erroneous evidentiary ruling was so prejudicial that his conviction must be set aside and a new trial ordered. We conclude that the trial court's ruling was not in error.

I

The defendant's first claim is that the purpose of the state's questions was to attack the defendant's credi-

bility.[3] The defendant further argues that if the state wanted to use the arrest to impeach the defendant, it should have introduced evidence of it during his testimony so that he would have had the opportunity to explain the circumstances surrounding the arrest.[4]

The premise of the defendant's argument is that the state referred to the defendant's arrest during its cross-examination of his brother-in-law, Fitzgerald, in order to impeach the defendant's own testimony. Our law limits the ways in which the state may impeach the credibility of a defendant who has taken the stand. In particular, extrinsic evidence of prior acts of misconduct is not admissible to attack his or her veracity. See *State* v. *Martin,* 201 Conn. 74, 86, 513 A.2d 116 (1986); *State* v. *Guthridge,* 164 Conn. 145, 157, 318 A.2d 87 (1972), cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186 (1973); *Martyn* v. *Donlin,* 151 Conn. 402, 408, 198 A.2d 700 (1964).

The defendant's argument, however, confuses an attack by the state on the credibility of a defendant who testifies on his or her own behalf, with an attack on a character witness called by the defendant who testifies as to the defendant's reputation for honesty. When a defendant calls a character witness to testify to a particular trait, the defendant opens the door for the state

---

[3] The defendant does not claim that the state introduced the evidence of prior misconduct to prove that the defendant had a criminal character and, consequently, had a propensity to commit the offense charged.

[4] A party is permitted on cross-examination to attack the credibility of a witness by reference to specific acts of misconduct of that witness. See *State* v. *Martin,* 201 Conn. 74, 85–86, 513 A.2d 116 (1986); *State* v. *Guthridge,* 164 Conn. 145, 157, 318 A.2d 87 (1972), cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186 (1973); *Martyn* v. *Donlin,* 151 Conn. 402, 408, 198 A.2d 700 (1964). Both the state and the defendant assume that evidence of the defendant's arrest would have been admissible during the state's cross-examination of the defendant. Our law has been stated to be to the contrary. See *State* v. *Annunziato,* 169 Conn. 517, 524, 363 A.2d 1011 (1975).

to cross-examine the witness by reference to prior acts of misconduct relevant to that trait. See *Michelson* v. *United States,* 335 U.S. 469, 479, 69 S. Ct. 213, 93 L. Ed. 168 (1948); *State* v. *Turcio,* 178 Conn. 116, 126–27, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980); *State* v. *Martin,* 170 Conn. 161, 164–65, 365 A.2d 104 (1976). The purpose of such cross-examination is not to contest the defendant's own veracity but rather to test the basis of the opinion offered by the character witness. See *Michelson* v. *United States,* supra; *State* v. *Turcio,* supra; *State* v. *Martin,* 170 Conn. 161, 164–65, 365 A.2d 104 (1976).

In this case, the defendant, when he called Fitzgerald to testify regarding the defendant's reputation in the community, elicited testimony from Fitzgerald concerning his view of the defendant as an honest person. That testimony opened the door for the state to cross-examine Fitzgerald by reference to prior acts of misconduct bearing on the trait of honesty. As did the trial court, we conclude that the state's references to the defendant's arrest for forgery and illegal use of a credit card during its cross-examination of Fitzgerald were not intended to focus on the defendant's credibility; they were intended, instead, to explore the basis of Fitzgerald's opinion that the defendant had a reputation for honesty. The phrasing "were you aware" and the follow-up question whether the fact of the arrest changed the witness' opinion of the defendant's reputation for honesty indicate that the prosecution sought to test the basis of Fitzgerald's opinion, not to challenge the defendant's credibility. Cf. *State* v. *Turcio,* supra, 126; *State* v. *Martin,* 170 Conn. 161, 165, 365 A.2d 104 (1976).

II

Alternatively, the defendant contends that the cross-examination of the character witness was improper

because the state's evidence did not relate to the crime charged. He argues that forgery and illegal use of a credit card implicate the defendant's honesty, a character trait that is irrelevant to the crime of sexual assault.

The rules governing the admissibility of character evidence are well established. A defendant is permitted to put a character trait into issue by proffering the testimony of a character witness to prove that it is unlikely that the defendant committed the crime charged. See *State* v. *Blake,* 157 Conn. 99, 103–104, 249 A.2d 232 (1968). To be admissible, the character evidence that a defendant seeks to introduce must be limited to specific traits and relevant to the offense charged. See *State* v. *Turcio,* supra, 127; *State* v. *Martin,* 170 Conn. 161, 165, 365 A.2d 104 (1976); *State* v. *Blake,* supra. During its cross-examination of that witness, the state, in turn, may not refer to acts of misconduct that are irrelevant to the traits that the defendant has placed in evidence. See *State* v. *Turcio,* supra; *State* v. *Martin,* 170 Conn. 161, 165–66, 365 A.2d 104 (1976). The state, nevertheless, is not required to limit itself to acts relevant to the offense charged if the defendant introduces evidence of good character going beyond traits that are salient to the crime charged. "It is not only by comparison with the crime on trial but by comparison with the reputation asserted that a court may judge whether the prior arrest should be made subject of inquiry. . . . The cross-examination may take in as much ground as the testimony it is designed to verify. To hold otherwise would give the defendant the benefit of testimony that he was honest and law-abiding in reputation when such might not be the fact . . . ." *Michelson* v. *United States,* supra, 483–84. We conclude that an arrest on charges of forgery and illegal use of a credit card is relevant to honesty, the trait that the defendant put in issue in this case, and that, therefore, the scope

of the cross-examination did not exceed the scope of the direct examination of the defendant's character witness.

The defendant maintains that his original question to the witness regarding the defendant's general reputation in the community was improper insofar as it evoked a response relating to the defendant's honesty. In the defendant's view, the state's only recourse was to object and to move to strike such testimony from the record. The state responds that it was entitled to explore the question of honesty once the defendant interjected that issue into the trial. We agree with the state that the defendant himself had a full opportunity to move to strike the improper testimony but did not avail himself of it.[5] "The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him." *Michelson* v. *United States,* supra, 479.

## III

The defendant's final claim is that admission of the prior acts of misconduct was more prejudicial than probative. At the first trial the jury was unable to arrive at a verdict, whereas the second trial resulted in a conviction. The defendant argues that the only significant difference between the two trials was the state's questions regarding the defendant's prior arrest, and that prejudice to the defendant from admission of the evidence is thus demonstrated. We are not persuaded.

A trial court has broad discretion in determining whether the probative value of proffered evidence is

---

[5] The defendant might well have asked the trial court for instructions limiting the use to which the jury could put the cross-examination referring to the defendant's arrest. Such limiting instructions might be given at the time of the state's cross-examination, at the time of the trial court's charge to the jury, or at both times.

outweighed by the prejudice that is likely to result from its admission. See *State* v. *Turcio, supra,* 128; *State* v. *Martin,* 170 Conn. 161, 166, 365 A.2d 104 (1976). We will not overturn its decision absent an abuse of discretion. See *State* v. *Turcio, supra,* 127; *State* v. *Martin,* 170 Conn. 161, 166, 365 A.2d 104 (1976). In this case, the trial court, by prohibiting the state from delving into the number of counts or into any other particulars of the defendant's prior arrest, ensured that the questions contained no more detail than was necessary to apprise the witness of the incidents to which the state was referring. The risk of prejudice was minimized by preventing the jury from hearing anything other than the bare bones of the charges for which the defendant had been arrested. Cf. *State* v. *Turcio, supra,* 126; *State* v. *Martin,* 170 Conn. 161, 165, 365 A.2d 104 (1976). As to the defendant's claim that the different outcomes of the two trials demonstrate prejudice resulting from admission of the arrest, we decline to engage in the speculative exercise that this argument invites. We conclude that the trial court did not abuse its discretion when it allowed the state to cross-examine the character witness by reference to the defendant's prior arrest for the limited purpose of testing the basis of the witness' testimony concerning the defendant's honesty.

There is no error.

In this opinion the other justices concurred.