STATE OF CONNECTICUT *v.* ROBERT BUSQUE
(9727)

O'CONNELL, LAVERY and LANDAU, Js.

Argued September 30, 1992—decision released April 27, 1993

*Susan M. Hankins,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Rosita M. Creamer,* senior assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of four counts of second degree sexual assault in violation of General Statutes § 53a-71 (a) (1),[1] one count of attempted second degree sexual assault in violation of General Statutes §§ 53a-49 (a)[2] and 53a-71 (a) (1) and five corresponding counts of risk of injury to a child in violation of General Statutes § 53-21.[3] A sentence of fifty years incarceration, suspended after twenty-five years, with five years probation, was imposed.

On appeal, the defendant claims that the trial court (1) improperly allowed the defendant to be cross-examined regarding prior, uncharged acts of misconduct and then improperly allowed the state to impeach him with rebuttal evidence of prior, uncharged misconduct, (2) improperly allowed the state to impeach a defense witness with a specific prior act of misconduct, (3) improperly instructed the jury that sexual intercourse was, per se, a violation of General Statutes § 53-21, risk of injury to a child, and (4) violated the defendant's right against double jeopardy by convicting him four times for second degree sexual assault and risk of injury to a child for the same allocated acts. We

---

[1] General Statutes § 53a-71 (a) provides in pertinent part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

[2] General Statutes § 53a-49 (a) provides in pertinent part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

reverse the judgment of the trial court on the first issue because the rebuttal testimony was more prejudicial than probative, and remand the case for a new trial. Consequently, we do not reach the merits of the remaining issues because they are unlikely to be encountered in a new trial.

The jury could reasonably have found the following facts. The victim, referred to throughout the trial as Miss Doe, is the defendant's daughter. On July 2, 1988, the victim's fourteenth birthday, the defendant sexually assaulted her, forcing her to engage in sexual intercourse. The defendant again forced the victim to engage in sexual intercourse on his birthday, July 30, 1988, on an unspecified date in the fall of that year, and again on December 24, 1988.

On January 30, 1989, at 6:30 a.m., the defendant told his daughter that she was not going to school, and attempted to assault her sexually. The defendant struck the victim in the face, and dragged her into his bedroom. He pushed her backward onto the bed, and tried to unbutton her pants. The victim told the defendant that she had to use the bathroom, got up, and ran downstairs and out of the house. The defendant pursued her onto the street, calling after her. The victim went to a neighbor's house where she telephoned her aunt and a friend, and told them about the incident that had just occurred and about previous incidents of sexual abuse involving her father. A gynecological examination of the victim on February 3, 1989, revealed medical evidence consistent with the victim's allegations.

During the trial, the victim also testified to a pattern of sexual abuse by her father which began when she was five years old and was interrupted for several years while the defendant was stationed abroad with the army and while he was serving a prison sentence for a previous crime. The defendant denied every allegation of sexual abuse made by his daughter.

The following course of events, which took place at the trial, are pertinent to the resolution of this appeal. The victim testified that when she was eight years old she and her father moved to New Britain to stay with D, the defendant's sister and the victim's aunt, and with D's daughter E, the victim's cousin. The victim told her cousin about the defendant's previous sexual abuse of her. At trial, the victim testified that the defendant had told her that he used to engage in sexual activity with E, his niece.

When E testified during the state's case-in-chief, she said that before the defendant and his second wife, Aileen Busque, were married, she warned Aileen that the defendant had demonstrated a violent tendency in the past, and had engaged in sexual activity with her and the victim. The state sought to allow E to testify about the defendant's sexual abuse of her. During an offer of proof outside the presence of the jury, E described how the defendant had initiated sexual activity with her when she was fourteen, and how that activity had progressed from fondling to oral sex and to intercourse. She told the court that the defendant had threatened to kill her if she told anyone about the sexual activity. E also described an incident in which the defendant had fired a pistol at her and she had been injured by flying glass. The state asked that E be allowed to testify before the jury about the defendant's prior misconduct with her in order to show that the defendant's abuse of his niece and daughter showed a common design or plan. The court, following the offer of proof, noted that there was a "strong similarity" between the activities involving the two girls, but ruled that E's testimony would be more prejudicial than probative, and did not allow it to go before the jury.

During the defendant's case-in-chief, the defendant testified on his own behalf. Following direct examina-

tion, he was cross-examined by the state's attorney. During cross-examination the following exchange occurred:

"[State's Attorney:] [I]sn't it possible that some of the details that your daughter has testified to, those incidents have occurred during periods of time when you were drinking. And that you don't remember them because you've suffered a blackout?

"[The Defendant:] No.

"Q. And why isn't that possible?

"A. Because I'm not that kind of person. I mean you could say a lot of things about somebody that drinks, but I don't go around raping little girls.

"Q. You're not that kind of person?

"A. No.

"Q. And when you say 'that kind of person,' what do you mean?

"A. Kind of person that goes around raping women; I don't rape women. That's bad."

Later during the state's cross-examination of the defendant, the state's attorney asked the defendant if he had sexually assaulted his niece, E, and the defendant denied that he had.

On the basis of the exchange quoted previously, the state again sought to allow E to testify before the jury regarding the defendant's prior sexual activity with her. The state asked that E be permitted to testify as a rebuttal witness on the issue of the defendant's credibility. The court ruled that E would be allowed to testify as to the defendant's prior misconduct with her, but that the testimony could be considered by the jury

only in terms of the defendant's credibility. The court addressed the jury with a limiting instruction before E testified, reminding the jury that the testimony was being offered only to shed light on the defendant's credibility. When E took the stand, she testified that the defendant arranged to sleep in the same bedroom with her by fabricating a story about his needing someone else in the room at night because he suffered from nightmares. She went on to describe in graphic detail how the defendant forced her to engage in sexual activity when she was fourteen and fifteen years of age. She described how the activity progressed from fondling to oral sex and to intercourse. E also described physical violence perpetrated against her by the defendant.

The defendant's first claim involves two issues. First, the defendant claims that the trial court improperly allowed the state to cross-examine him regarding evidence of prior misconduct not related to veracity. Second, he claims that the trial court improperly allowed the state to introduce extrinsic evidence on rebuttal with respect to the alleged prior misconduct. We decline to review the first issue of the defendant's claim, but agree with the defendant's position because the rebuttal evidence was more prejudicial than probative.

The defendant initially claims that the trial court improperly allowed the state to cross-examine him with regard to prior acts of misconduct not related to veracity. We choose not to review this claim because it was not properly preserved for appeal.

Our review of the transcript reveals that when defense counsel objected to cross-examination of the defendant about prior misconduct, he did not state that he was objecting because the questions the state asked did not pertain to veracity. Instead, counsel

stated that his objection was "based on the argument we had earlier, Your Honor."[4]

We have carefully examined the earlier argument referred to in the trial transcript. The discussion to which defense counsel referred ensued when he made an oral motion asking the court to define the limits of the state's cross-examination of the defendant and rebuttal following his testimony. It appears that defense counsel anticipated that his client would testify about the shooting incident involving the defendant and his niece, and was concerned that if testimony by the defendant about that issue would "open the door" to cross-examination about the defendant's prior sexual misconduct with E. Properly, the trial court refused to speculate on this issue, and told defense counsel that the state could cross-examine the defend-

---

[4] During the state's cross-examination of the defendant, the following exchange occurred:

"[State's Attorney:] Isn't it a fact that when [E], your niece, was 14 and 15, that you sexually assaulted her?

"Mr. Weingast [Defense Counsel]: Objection, Your Honor.

"The Court: Objection overruled.

"Mr. Weingast: And it's based on the argument we had earlier, Your Honor.

"The Court: Yes, yes, Mr. Weingast.

"Mr. Weingast: May I have an exception?

"The Court: Exception is noted."

The state continued with its cross-examination, and the following exchange occurred:

"[State's Attorney:] Isn't it a fact that for a period of time [E] was required to sleep in that [the defendant's] room with you?

"[The Defendant:] No.

"Mr. Weingast: May I have a standing objection to this line of questioning?

"The Court: Yes, Mr. Weingast. We went through this in the argument.

"Mr. Weingast: As long as I have a standing objection. I just want that clear for the record.

"The Court: I keep telling you, you do, Mr. Weingast.

"Mr. Weingast: Thank you."

Cross-examination by the state resumed, and the defendant denied that he had ever sexually assaulted his niece.

ant on anything about which he testified. At no time during this colloquy did the issue of cross-examination regarding prior misconduct not pertaining to veracity, which the defendant raises on appeal, arise.

Our rules of practice require that when an objection to the admission of evidence is made "counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had." Practice Book § 288. We are not bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. Practice Book § 4185. "This court reviews rulings solely on the ground on which the party's objection is based." *State* v. *Manning,* 162 Conn. 112, 118, 291 A.2d 750 (1971). "In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling." *State* v. *Braman,* 191 Conn. 670, 684–85, 469 A.2d 760 (1983), and cases cited therein. "[O]nce the authority and the ground for an objection are stated, our review of the trial court's ruling is limited to the ground asserted." Id.

The ground for objection here was "the argument we had earlier." Even if we view that argument in the light most favorable to the defendant's objection, we might conclude that the defendant was objecting because the state was cross-examining beyond the scope of the defendant's direct testimony, but even that conclusion would be speculative. Because the defendant did not properly preserve the issue of whether the state's cross-examination was proper, we decline to review that claim.

In the second part of the defendant's first claim he asserts that the trial court improperly allowed the jury to consider rebuttal evidence of prior uncharged misconduct. Among other grounds, the defendant argues, as he did in the trial court, that the misconduct evidence was more prejudicial than probative. We conclude that even if our rules of evidence allowed the introduction of E's testimony, the testimony was clearly more prejudicial than probative. We therefore need not reach the merits of the defendant's other grounds regarding this issue.[5]

Generally, evidence of prior crimes or misconduct is not admissible due to the prejudicial nature of such evidence. *State* v. *Holliday,* 159 Conn. 169, 172, 268 A.2d 368 (1970); *State* v. *Harris,* 147 Conn. 589, 599, 164 A.2d 399 (1960). Evidence of a defendant's prior misconduct may be admitted for certain purposes, such as proving intent, identity, malice, motive or a system of criminal activity. *State* v. *Sierra,* 213 Conn. 422, 428–29, 468 A.2d 448 (1990). Evidence of prior misconduct will be admitted under these exceptions only if it is relevant to at least one of the circumstances encompassed by the exceptions, and if the value of the evidence outweighs its prejudicial effect." Id., 429.

We recognize that a trial court has broad discretion in determining whether the probative value of proffered evidence is outweighed by the prejudice that is likely to result from its admission. *State* v. *McGraw,* 204

---

[5] We note that the state, in response to this claim by the defendant, argues that the defendant "opened the door" to E's rebuttal testimony by his response on cross-examination that he is not the type of person who rapes little girls and women. We also note that the defendant in his brief claims that he did not "open the door" to the testimony. Because, as we have stated, E's testimony was more prejudicial than probative, even if its introduction were permitted under our rules of evidence, we decline to analyze this claim in terms of the doctrine of "opening the door."

Conn. 441, 449–50, 528 A.2d 821 (1987). We will not overturn the court's determination of this issue absent an abuse of discretion. Id., 450.

Our Supreme Court recently analyzed the issue of prejudicial effect versus probative value in *State* v. *Baldwin,* 224 Conn. 347, 618 A.2d 513 (1993). In that case, the trial court admitted evidence of prior misconduct under the intent exception to the prior misconduct rule. A police officer was permitted to testify that, prior to the defendant's arrest for narcotics sales, he had observed the defendant engaging in what the officer believed to be the sale of narcotics. While in *Baldwin* the prior crimes evidence was allowed to show intent, which is an element of the crime charged in that case, in this case the evidence was allowed in order to shed light on the credibility of the defendant as a witness. Credibility, unlike intent in *Baldwin,* is not an element of the crimes charged in this case.

"Our analysis begins with the general rule excluding [prior crimes] evidence so as to avoid the danger of prejudice against the defendant which may result from the admission of such evidence. . . . *State* v. *Onofrio,* 179 Conn. 23, 28, 425 A.2d 560 (1979)." (Internal quotation marks omitted.) Id., 356. "The trial court's 'discretion' to admit other crimes evidence imports something more than leeway in decision-making. Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . When assessing the admissibility of 'other crimes' evidence, the application of a mechanical test determining that the proffered evidence fits within some class of exception to the rule of nonadmissibility, may obscure sight of the underlying policy of protecting the accused

against unfair prejudice. That policy ought not to evaporate through the interstices of the classification. The problem is thus one of balancing the actual relevancy of the 'other crimes' evidence in light of the issues and the other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence. . . . [*State* v. *Sierra,* supra, 435]." (Internal quotation marks omitted.) Id., 356–57.

In this case, the defendant was charged with sexual assault on and risk of injury to his daughter, not his niece. The jury, however, heard lengthy and emotional testimony from two victims when the defendant was charged with crimes against only one of them. The second victim was allowed to testify in order to help the jury determine the defendant's credibility as a witness.

We turn to the test set out in *State* v. *Baldwin,* supra, to determine whether the trial court properly determined whether the probative value of E's testimony outweighed its prejudicial effect. We must determine whether the trial court properly balanced the "actual relevancy of the 'other crimes' evidence in light of the issues and the other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence." Id., 357. Essentially, the state's argument is that E's testimony about the defendant's prior misconduct was admissible because the defendant was untruthful when he denied on cross-examination that he did not abuse E. In order to impeach the defendant's credibility, his niece was permitted to testify in graphic detail about continued acts of sexual abuse perpetrated by the defendant against her. Again, the defendant's credibility was not an element of the crimes charged. The testimony was pre-

sented on rebuttal, after the state had presented the jury with ample evidence to allow a reasonable jury to conclude that the defendant was guilty. E's testimony was very likely to rouse the jury. We conclude, therefore, that the trial court abused its discretion in concluding that the probative value of E's testimony outweighed the prejudice that could result from the jury's hearing about serious and disturbing prior uncharged crimes of a nature similar to those charged involving incestuous sexual misconduct.

Although we conclude that the trial court improperly admitted the evidence of the defendant's prior misconduct, we must determine whether the trial court's decision was harmful. In a case involving an evidentiary ruling, it is the defendant's burden to show that it is more probable than not that the court's action affected the result. *State* v. *Sierra,* supra, 436–37. We conclude that the defendant has met this burden.

As we have noted, the jury heard testimony about prior, uncharged crimes committed by the defendant against a third party. E's testimony was more damaging than that of the victim. She described not only sexual abuse, but violence perpetrated against her by the defendant. Despite the curative instructions of the court, it would be difficult for a juror to refrain from seeing the pattern that emerges from the testimony of the defendant's daughter and niece. The evidence was likely to lead a juror to conclude that the defendant was disposed to commit such crimes.[6] "Any

[6] Our review of the trial transcript reveals that during closing arguments the state, despite the curative instruction to the jury charging them that they could consider E's testimony about the defendant's prior misconduct only in relation to the defendant's credibility, argued to the jury that the state was permitted to recall E to "rebut the defendant's claim that he was not that kind of person." The state reviewed E's testimony for the jury. Later, the state said: "To believe that [the victim] fabricated these things, you'd also have to disregard the testimony of [E], that she had been

improper evidence that may have a tendency to excite the passions, awaken the sympathy, or influence the judgment, of the jury, cannot be considered as harmless."[7] Id., 437.

Because we reverse the judgment of the trial court with regard to the first issue, and because the remaining issues are unlikely to be encountered in a new trial, we decline to review the defendant's remaining claims.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

an earlier victim of the defendant." This argument materially connects the charged crime, allegedly committed by the defendant against his daughter, and the uncharged crime, allegedly committed by the defendant against his niece. It is an example of how the jury could be swayed to believe that if the defendant committed the crime previously, he is likely to have done it again.

[7] We note that when the state, out of the presence of the jury, originally offered E's testimony regarding the defendant's prior misconduct in order to show a common design or plan, the trial court, considering the prejudicial impact of the testimony, remarked, "It's the type of evidence that would almost surely guarantee a verdict of guilt."