STATE OF CONNECTICUT *v.* TRACEY BRYAN
(13196)

LAVERY, HEIMAN and SPEAR, Js.

Argued February 14—decision released May 10, 1994

*Richard Cramer,* with whom, on the brief, was *Brian M. O'Connell,* special public defender, for the appellant (defendant).

*Timothy J. Sugrue,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Rosita M. Creamer,* senior assistant state's attorney, for the appellee (state).

SPEAR, J. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a.[2] On appeal, she claims that the trial court improperly (1) denied her request to charge the jury regarding the affirmative defense of extreme emotional disturbance, (2) admitted evidence of her prior conviction for creating a public disturbance, and (3) commented on a question posed by defense counsel to a witness on cross-examination. We reverse the judgment of conviction and remand the case for a new trial.

The jury reasonably could have found the following facts. The defendant, Tracey Bryan, and the victim, Gina Whitehead, were both romantically involved with Keith Dawes. Dawes and the victim were the parents of a child and had been involved for several years before Dawes met the defendant. Dawes and the victim lived together, but their relationship terminated and they separated for a time in 1989 and 1990. During that time, Dawes began dating the defendant, and the victim was aware of that relationship.

[1] Pursuant to Practice Book § 4023, the Supreme Court transferred this appeal to this court.

[2] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

In June, 1989, during the time that the defendant and Dawes were dating, the defendant telephoned Dawes at his apartment at 2620 Main Street in Hartford, and the victim answered. The victim identified herself as the mother of Dawes' child. The defendant was upset because she recognized the voice on the telephone as that of the woman who had made threatening phone calls to her at her workplace. Some time later the defendant went to Dawes' apartment to discuss their relationship and to determine whether Dawes had resumed seeing the victim. At Dawes' apartment, the defendant and the victim confronted each other in the front yard where they argued and exchanged profanities and threats. The defendant carried a spatula for protection, but did not try to harm the victim with it.

The defendant stopped seeing Dawes after this incident, but resumed seeing him in October, 1989. After their confrontation in June, 1989, the defendant continued to receive threatening phone calls from the victim at work. The defendant was often visibly upset after receiving these calls because she was afraid of the victim. On one occasion, the victim threw a rock at the defendant's car. On another occasion, after the defendant had spent the night at Dawes' apartment, the victim drove a car close to the apartment building in the early morning and yelled to the defendant to come outside. The victim also followed the defendant several times while the defendant was on her lunch hour in downtown Hartford. In August, 1990, the defendant stopped dating Dawes and they maintained a friendship. Dawes resumed dating the victim.

On November 23, 1990, in the late afternoon, the defendant went to visit Dawes at his request and parked her car in the driveway behind Dawes' apartment. Dawes let her in and they went downstairs to his bedroom to watch television. Shortly thereafter, the victim arrived at the back door of the apartment.

Dawes' brother, Gerard Dawes, heard the victim knock but did not let her in because he knew that the defendant was visiting with his brother in the downstairs bedroom. Gerard summoned Dawes, who left his bedroom and went to answer the door. The victim, who had noticed the defendant's car parked in the driveway, expressed her anger over the defendant's presence in the apartment. Dawes tried to calm the victim and prevent her entry into the apartment in an effort to avoid trouble, because he knew that both women had explosive tempers. The victim told Dawes that she wanted the defendant to leave. She then forced her way past him and into the back hallway where she and Dawes argued loudly.

The defendant heard the commotion upstairs and became frightened when she recognized the victim's voice. The defendant did not want the victim to find her in Dawes' bedroom, so she ascended the stairs to the hallway occupied by Dawes and the victim. The victim and the defendant began to argue. Both women were very upset and began punching each other. Dawes attempted to intercede, but was unsuccessful. The victim threw her umbrella at the defendant and kicked her in the leg, causing the defendant to lose her balance and fall against the wall. The victim then pulled the defendant's hair, ripping one of the braids from her head. During this altercation, the victim was stabbed in the back. No one saw the defendant stab the victim, and the defendant did not remember doing so. The defendant admitted having taken a steak knife from her pocketbook, having placed it in her hand, and having swung that hand at the victim.

After the victim exclaimed that she had been stabbed, Dawes forced the defendant out of the apartment and drove the victim to a hospital where she died as a result of a single stab wound. The defendant was convicted of murder and this appeal ensued.

## I

The defendant first claims that the trial court improperly denied her request to charge the jury on the affirmative defense of extreme emotional disturbance. The defendant contends that sufficient evidence was adduced at trial to require a jury instruction on this affirmative defense. We agree.

"[A] fundamental element of due process is the right of a defendant charged with a crime to establish a defense. *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Belle,* 215 Conn. 257, 273, 576 A.2d 139 (1990). "If the defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction." *State* v. *Fuller,* 199 Conn. 273, 278, 506 A.2d 556 (1986); *State* v. *Lewis,* 220 Conn. 602, 618, 600 A.2d 1330 (1991); *State* v. *Havican,* 213 Conn. 593, 597, 569 A.2d 1089 (1990). Extreme emotional disturbance is a recognized legal defense to murder. General Statutes § 53a-54a (a).

Section 53a-54a (a) provides in pertinent part that "it shall be an affirmative defense [to the crime of murder] that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be . . . ." "Extreme emotional disturbance 'is a mitigating circumstance which will reduce the crime of murder to manslaughter.' *State* v. *Asherman,* 193 Conn. 695, 731, 478 A.2d 227 (1984),

cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985)." *State* v. *Raguseo,* 225 Conn. 114, 122, 622 A.2d 519 (1993).

Before an instruction on extreme emotional disturbance is warranted, however, a defendant bears the initial burden of producing sufficient evidence of the defense to substantiate such a charge. See *State* v. *Thomas,* 205 Conn. 279, 282, 533 A.2d 553 (1987); *State* v. *Asherman,* supra, 193 Conn. 731–32; see also *State* v. *Jacobowitz,* 194 Conn. 408, 412, 480 A.2d 557 (1984). "[A]n extreme emotional disturbance is one where self-control and reason are overborne by intense feelings such as passion, anger, distress, grief, excessive agitation or other similar emotions." *State* v. *Elliott,* 177 Conn. 1, 9, 411 A.2d 3 (1979). The defendant is not required to introduce expert testimony to establish that she was acting under extreme emotional disturbance when she stabbed the victim. Rather, she may simply offer her own testimony or the testimony of lay witnesses. See *State* v. *Fair,* 197 Conn. 106, 111, 496 A.2d 461 (1985), cert. denied, 475 U.S. 1096, 106 S. Ct. 1494, 89 L. Ed. 2d 895 (1986).

In reviewing a claim that the trial court failed to charge the jury as requested, "we must adopt the version of the facts most favorable to the defendant which the evidence would reasonably support." (Internal quotation marks omitted.) *State* v. *Lewis,* supra, 220 Conn. 619. At trial, the defendant testified about the long-standing threatening behavior displayed by the victim toward the defendant and the effect the victim's actions had on her. In particular, the defendant testified that one day in June, 1989, she went to Dawes' apartment to discuss their relationship and she encountered the victim there. The defendant testified that the victim jumped off the front porch and came at the defendant, who was standing with a friend on the walkway. She also testified that she received numerous threat-

ening phone calls from the victim at work, which were corroborated by the testimony of a coworker. The coworker testified that the defendant would become visibly upset and tremble after receiving these calls because she was afraid of the victim.

The defendant also testified about other contact she had had with the victim. The victim would stalk the defendant when she was on her lunch hour and when the defendant tried to elude the victim by entering a store, the victim would follow her inside or wait outside on the sidewalk. The defendant also testified that the victim threw a rock at her car on one occasion and came over to Dawes' apartment early one morning and yelled at her to come outside.

Evidence was also produced by state's witnesses to support the defendant's affirmative defense of extreme emotional disturbance. Dawes and his sister, Darlene Dawes, testified to the victim's explosive temper. Dawes also testified that the victim had threatened to beat up the defendant. Gerard testified that on November 23, 1990, he refused to answer the door to the apartment when the victim knocked because he did not want the victim and the defendant to fight. Dawes also testified that he attempted, without success, to prevent the victim's entry into his apartment to prevent a confrontation between the two women.

The defendant testified that when she realized that the victim was in Dawes' apartment, she became concerned for her well-being. Because she was afraid of the victim and did not want the victim to find her in Dawes' bedroom, she went into the hallway. When the victim saw the defendant, she struggled to free herself from Dawes' hold. Once free, she kicked the defendant while brandishing an umbrella. A fight ensued and the victim was stabbed.

"[A] defendant is entitled to have instructions presented relating to any theory of defense for which *there is any foundation in the evidence, no matter how weak or incredible. . . .*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Havican,* supra, 213 Conn. 597. There was evidence of continuous threats by the victim and of numerous confrontational and potentially violent episodes between the victim and the defendant, which caused the defendant to fear the victim. Additionally, there was evidence that these occurrences caused the defendant to become very angry and upset. See *State* v. *Elliott,* supra, 177 Conn. 9. In order to raise the defense of extreme emotional disturbance, it is not necessary that "the homicidal act occur immediately after the cause or causes of the defendant's extreme emotional disturbance; or that the defendant have lost all ability to reason." Id., 7. Accordingly, we conclude that there was sufficient evidence to warrant a jury charge on the defense of extreme emotional disturbance.

## II

The defendant next claims that the trial court improperly admitted into evidence her prior conviction for creating a public disturbance. We address this issue because it is likely to arise during the new trial.

Additional facts are necessary for a resolution of this issue. At trial, the defendant presented several character witnesses who testified that the defendant was a peaceful and truthful person. During cross-examination of one such witness, the state sought to introduce evidence of the defendant's prior conviction for creating a public disturbance. In the absence of the jury, the state represented that on May 21, 1988, the defendant had been arrested by the Hartford police for assault in the third degree. The police report alleged that the defendant had beaten and injured a thirteen year old

girl. The defendant represented that the resulting conviction was based on an *Alford*[3] plea for breach of the peace, for which she paid a fine but did not admit culpability. The trial court ruled that the state could use the prior conviction to test its effect on the opinion of the character witnesses but that it could not refer to the underlying circumstances unless the state could produce a witness to the incident or a sentencing transcript. The defendant objected to the use of the conviction in the absence of certification that there was a conviction. At the state's suggestion, a recess was called so that the conviction might be documented by the court clerk's office. Following the recess, the state reported to the court that the defendant's arrest on May 21, 1988, had resulted in a plea of guilty to creating a public disturbance for which a $50 fine had been imposed. The court ruled that the state could use the conviction to test the character witnesses as long as it produced a certified copy. The defendant objected on the grounds that use of her prior conviction was improper because creating a public disturbance was an infraction and not a criminal offense, that the state had failed to produce evidence of the facts underlying the conviction, and that evidence of the conviction was more prejudicial than probative. The court overruled the objections finding that the conviction constituted misconduct that involved violence and could, therefore, be used to rebut the testimony of the character witnesses that the defendant was a peaceful person. The court ruled that the conviction of an infraction, like a conviction of a criminal offense, is evidence of misconduct admissible to rebut the character trait of nonviolence that was placed in issue by the defendant.

The state was thus permitted to question the character witnesses as to whether they were aware that

---

[3] *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

the defendant had been convicted of creating a public disturbance in 1988 and whether such knowledge would affect their opinions of the defendant. The trial court then instructed the jury that because the defendant had put her character traits of truthfulness and peacefulness in issue, the state was entitled to ask questions concerning those traits from the witnesses who had expressed their opinions of the defendant.

"When a defendant calls a character witness to testify to a particular trait, the defendant opens the door for the state to cross-examine the witness by reference to prior acts of misconduct relevant to that trait." *State* v. *McGraw,* 204 Conn. 441, 446–47, 528 A.2d 821 (1987); *State* v. *Turcio,* 178 Conn. 116, 126–27, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980). "The purpose of such cross-examination is not to contest the defendant's own veracity but rather to test the basis of the opinion offered by the character witness"; *State* v. *McGraw,* supra, 447; and " 'to test the credibility of the character witness by ascertaining his good faith, his source and amount of information and his accuracy'. . . ." (Citations omitted.) *State* v. *Ostolaza,* 20 Conn. App. 40, 46, 564 A.2d 324, cert. denied, 213 Conn. 808, 568 A.2d 793 (1989). "The question should not be extended to the *details* of the acts." (Emphasis added.) *State* v. *Martin,* 170 Conn. 161, 165, 365 A.2d 104 (1976).

In the present case, the state did not inquire about the factual details of the specific act, but asked the witnesses only if they were aware that the defendant had previously been convicted of creating a public disturbance and whether such knowledge would affect their opinions of the defendant. The defendant claims that the admission of "the infraction," without a factual basis, constituted harmful error because it caused the jury "adversely [to] speculate as to the nature and degree of the unknown transgression."

Our review of evidentiary rulings is limited. "We will not overturn a trial court's evidentiary ruling unless there is an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." *State* v. *Alvarez,* 216 Conn. 301, 306, 579 A.2d 515 (1990); *State* v. *Robinson,* 227 Conn. 711, 732, 631 A.2d 288 (1993); *State* v. *Boles,* 223 Conn. 535, 549, 613 A.2d 770 (1992); *State* v. *Bailey,* 32 Conn. App. 773, 778, 631 A.2d 333 (1993). With respect to the trial court's discretion, great weight is accorded the trial court's decision and every reasonable presumption will be indulged in favor of its correctness. *State* v. *Leonard,* 31 Conn. App. 178, 190, 623 A.2d 1052 (1993).

We cannot say that the trial court abused its discretion in admitting evidence of the defendant's prior conviction for creating a public disturbance. The defendant opened the door when she introduced evidence of her peaceful nature. Allowing the state to question the character witnesses concerning the basis of their testimony was a proper exercise of the trial court's discretion.

III

The defendant's final claim is that the trial court deprived her of her constitutional right to a fair trial before an impartial trier when, during its instructions to the jury, the court characterized certain questions posed by defense counsel as improper. Having concluded that the defendant is entitled to a new trial, we need not address this issue because it is unlikely to recur on remand. See, e.g., *State* v. *Hart,* 221 Conn. 595, 613, 605 A.2d 1366 (1992); *State* v. *Williams,* 202 Conn. 349, 365, 521 A.2d 150 (1987); *State* v. *Little,* 32 Conn. App. 842, 848, 632 A.2d 43 (1993).

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.