STATE OF CONNECTICUT *v.* BILLY JOE SANTOS
(14990)

Dupont, C. J., and Foti and Daly, Js.

Argued December 11, 1995—officially released May 14, 1996

*Charles L. Howard,* with whom, on the brief, was *Maria A. Gulluni,* for the appellant (defendant).

*Donald A. Browne,* state's attorney, with whom, on the brief, was *Stephen J. Sedensky III,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant, Billy Joe Santos, appeals[1] from the judgment of conviction, rendered unanimously by a three judge panel,[2] of murder in violation of General Statutes § 53a-54a (a). On appeal, the defendant claims that the trial court improperly (1) concluded that he failed to establish his defense of extreme emotional disturbance and (2) concluded that he acted with intent

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

[2] The three judges were impaneled pursuant to General Statutes § 54-82 which provides in relevant part: "(a) In any criminal case, prosecution or proceeding, the party accused may, if he so elects when called upon to plead, be tried by the court instead of by the jury; and, in such case, the court shall have jurisdiction to hear and try such case and render judgment and sentence thereon.

"(b) If the accused is charged with a crime punishable by death or imprisonment for life and elects to be tried by the court, the court shall be composed of three judges to be designated by the chief court administrator, or his designee, who shall name one such judge to preside over the trial. Such judges, or a majority of them, shall have power to decide all questions of law and fact arising upon the trial and render judgment accordingly. . . ."

to cause the death of the victim. We affirm the judgment of the trial court.

The facts are as follows. During the late evening of November 8 or the early morning of November 9, 1992, the sixteen year old defendant was visiting 52-56 Sanford Place in Bridgeport. While there, the defendant ingested a narcotic substance and fell asleep in the rented room of Primitivo Rivera. Approximately one hour later, he was awakened by Rivera and Miriam Fernandez who were screaming that the defendant's friend, Jorge Ramos, had suffered a gunshot wound to the face. The defendant gave Ramos a towel to stop the bleeding and the two exited the house and approached a pickup truck operated by the victim, Lee Ann Strong, and occupied by a passenger, Christina Gay. Gay observed the defendant emerge from the Sanford Place residence and testified that he did not appear to be under the influence of drugs. The defendant asked the victim for assistance to take Ramos to the hospital. She refused and pulled away. The defendant then pulled a .38 caliber revolver, loaded with hollow point bullets, from his waistband, positioned himself, pointed the weapon at the rear of the departing truck, cocked the hammer and discharged a single shot that penetrated the rear window of the truck and struck the victim in the back, perforating a major blood vessel. The truck struck several automobiles parked on Sanford Place. Gay took over the operation of the truck and drove to Park City Hospital where Strong died. The defendant and Ramos continued on foot to a local bar where a call was made for an ambulance that transported Ramos to a hospital.

On November 11, 1992, the defendant went to the detective bureau of the Bridgeport police department and related several different versions of the shooting to Detective Giselle Dospoj. The last version was that when his request for a ride to the hospital was refused,

he became angry, pulled out his gun and fired at the truck. A ballistics test indicated that it was the defendant's weapon that had inflicted the fatal wound.

## I

The defendant first claims that the panel misconstrued the statutory standard for extreme emotional disturbance or, alternatively, that the panel's conclusion that the defendant did not prove the defense was not reasonably supported by the evidence. Because the defendant failed to preserve his claim properly at trial, he seeks review based on the authority of *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. Under *Golding,* "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id. "The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." (Internal quotation marks omitted.) *State* v. *Sanders* 37 Conn. App. 219, 220, 655 A.2d 805, cert. denied, 233 Conn. 909, 658 A.2d 981 (1995); *Wilson* v. *Cohen,* 222 Conn. 591, 603, 610 A.2d 1177 (1992); *State* v. *Graham,* 33 Conn. App. 432, 442, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994). The defendant claims that the panel, by misconstruing the extreme emotional disturbance standard, denied him the constitutional due process right to establish a defense. Because "[e]xtreme emotional disturbance is a recognized legal defense to murder"; *State* v. *Bryan,* 34 Conn.

App. 317, 321, 641 A.2d 443 (1994); we grant review under the third *Golding* prong.

Section 53a-54a (a) provides in pertinent part that "it shall be an affirmative defense [to the crime of murder] that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be . . . ." "Extreme emotional disturbance 'is a mitigating circumstance which will reduce the crime of murder to manslaughter.'" *State* v. *Raguseo*, 225 Conn. 114, 122, 622 A.2d 519 (1993), quoting *State* v. *Asherman*, 193 Conn. 695, 731, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). General Statutes § 53a-12 (b) provides: "When a defense declared to be an affirmative defense is raised at a trial, the defendant shall have the burden of establishing such defense by a preponderance of the evidence."

A

The defendant first contends that the three judge panel applied an incorrect standard in evaluating his affirmative defense. As the defendant concedes, the panel's verdict first set forth the correct standard for evaluating an extreme emotional disturbance defense as found in § 53a-54a (a). Then, in rejecting the defendant's extreme emotional disturbance defense, the panel concluded that "the victim's refusal to agree to the defendant's request to take Ramos to the hospital when considered from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be did not provide a reasonable explanation for the defendant's act of shooting at and killing the victim." The defendant asserts that the

panel misconstrued the statutory standard because it concluded that there was not a reasonable explanation for his *act*. He claims instead that the statute requires a trial court to determine whether there was a reasonable explanation for his *emotional disturbance*. We disagree.

Our Supreme Court has stated that, in enacting the defense in § 53a-54a (a), "the legislature intended to establish a standard that is objective in its overview, but subjective as to the defendant's belief . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Raguseo*, supra, 225 Conn. 127, quoting *State* v. *Elliott*, 177 Conn. 1, 7, 411 A.2d 3 (1979). Thus, in applying the reasonable person yardstick, the trier of fact must examine the "reasonableness of the explanation or excuse of the *action* of the defendant from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." (Emphasis added; internal quotation marks omitted.) *State* v. *Raguseo*, supra, 127. In a later case, the court asserted that it was "unpersuaded that the above statements in *Elliott* . . . are inconsistent with the proper construction of § 53a-54a (a)." *State* v. *Ortiz*, 217 Conn. 648, 653–54, 588 A.2d 127 (1991). Applications of this standard consistently have been upheld. For instance, in *State* v. *Steiger*, 218 Conn. 349, 384, 590 A.2d 408 (1991), the court affirmed a three judge panel's rejection of an extreme emotional disturbance defense since "there was no reasonable explanation for the defendant's *actions* . . . ." (Emphasis added.) Also, the court in *State* v. *D'Antuono*, 186 Conn. 414, 422, 441 A.2d 846 (1982), stated that a panel "was not bound to conclude that [the defendant's testimony] provided 'a reasonable explanation or excuse' for his *actions*." (Emphasis added.) Finally, in *State* v. *Raguseo*, supra, 127, the court reaffirmed its standard for interpreting § 53a-54a (a).

In the present case, the panel's conclusion precisely tracks the standard for interpreting § 53a-54a (a) as established by our Supreme Court in *Elliott*. The court moreover has not wavered in applying this standard. Therefore, the panel correctly applied the proper standard in concluding that the defendant had not met his burden of proving that he acted under the influence of an extreme emotional disturbance. We conclude that the defendant has failed to demonstrate that a constitutional violation exists that clearly deprived the defendant of a fair trial.

B

The defendant also argues that the panel improperly found that he had failed to prove the affirmative defense of extreme emotional disturbance by a fair preponderance of the evidence. Our Supreme Court has stated that "in determining whether the defendant has proven the affirmative defense of an extreme emotional disturbance . . . the [trier of fact] must find that: (a) the emotional disturbance is not a mental disease or defect that rises to the level of insanity as defined by the Penal Code; (b) the defendant was exposed to an extremely unusual and overwhelming state, that is, not mere annoyance or unhappiness; and (c) the defendant had an extreme emotional reaction to it, as a result of which there was a loss of self-control, and reason was overborne by extreme intense feelings, such as passion, anger, distress, grief, excessive agitation or other similar emotions." *State* v. *Elliott*, supra, 177 Conn. 9.

"Although this case presents an unusual procedural posture where a three-judge panel serves as the finder of facts (instead of a jury) and where the burden is on the defendant to prove his affirmative defense, the normal rules for appellate review of factual determinations apply and the evidence must be given a construction most favorable to sustaining the court's verdict.

*State* v. *Chetcuti*, 173 Conn. 165, 172, 377 A.2d 263 (1977). Moreover, the question is whether upon the facts established and the inferences drawn therefrom the fact-finder could have reasonably concluded that the cumulative effect of the evidence failed to establish that the defendant acted under the influence of an extreme emotional disturbance for which there was a reasonable explanation or excuse. In sum, except where an abuse of discretion is clearly shown, the conclusion of a trial court should be affirmed so long as it is a reasonable one on the basis of the evidence adduced and the inferences drawn therefrom." *State* v. *Zdanis* 182 Conn. 388, 391–92, 438 A.2d 696 (1980), cert. denied, 450 U.S. 1003, 101 S. Ct. 1715, 68 L. Ed. 2d 207 (1981). " 'In the final analysis . . . the ultimate determination of the presence or absence of extreme emotional disturbance [is] one of fact for the trier . . . .' " *State* v. *Steiger*, supra, 218 Conn. 383, quoting *State* v. *Zdanis*, supra, 395.

The defendant points to evidence adduced at trial that, after learning that his friend had been shot, the defendant looked scared, mad, angry, shocked and confused when he walked out of the house toward the victim's truck. In addition, the defendant told the police that the victim's refusal to transport his friend to the hospital angered him. It was reasonable, however, for the panel to conclude that such evidence did not constitute the "extreme intense feelings" that the *Elliott* standard requires.[3] In fact, there was evidence presented that contradicts the defendant's assertion that he was acting under extreme emotional disturbance. Gay testified that the defendant was in control as he approached the truck. There was testimony that as the victim drove

---

[3] In evaluating the defendant's extreme emotional disturbance defense, the three judge panel stated that it had "fully considered the unusual circumstances surrounding the shooting of Ramos and the other circumstances that the defendant was in . . . ."

away, the defendant positioned himself behind the truck, pointed the gun, cocked the hammer and fired one shot. After the shooting, the defendant then continued to assist his friend by walking with him to a bar and arranging transportation to the hospital. Because the evidence must be given a construction most favorable to sustaining the trial court's verdict and because the trial court's findings are reasonably supported by the evidence, we hold that the trial court properly concluded that the defendant did not meet his burden of proving that he had acted under the influence of extreme emotional disturbance.

## II

The defendant's second claim is that there was insufficient evidence for the panel to have found that the defendant possessed the requisite intent to kill. As a subsidiary matter, he also contends that the state failed to prove that he was capable of forming the specific intent to commit murder because of his intoxication. We disagree.

" 'In reviewing a sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [fact-finder] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Greenfield*, 228 Conn. 62, 76, 634 A.2d 879 (1993). The specific intent to kill is an essential element of the crime of murder. To act intentionally, the defendant must have had the conscious objective to cause the death of the victim. General Statutes § 53a-3 (11). . . . *State* v. *Raguseo*, [supra, 225 Conn. 120]. Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. *State* v.

*Greenfield,* supra, 77. Therefore, intent is often inferred from conduct; id., 76; and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. *State* v. *Raguseo,* supra, 119. This does not require that each subordinate conclusion established by or inferred from evidence, or even from other inferences, be proved beyond a reasonable doubt because this court has held that a [trier of fact's] factual inferences that support a guilty verdict need only be reasonable. *State* v. *Crafts,* 226 Conn. 237, 244, 627 A.2d 877 (1993). Nevertheless, because intent to cause the death of a person is an element of the crime; *State* v. *Raguseo,* supra, 120; that intent must be proven beyond a reasonable doubt. *Patterson* v. *New York,* 432 U.S. 197, 204, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977); *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Furthermore, [i]ntent to cause death may be inferred from the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death. . . . *State* v. *Raguseo,* supra, 120. . . . *State* v. *Sivri,* 231 Conn. 115, 126–27, 646 A.2d 169 (1994)." (Internal quotation marks omitted.) *State* v. *Mejia,* 233 Conn. 215, 223–24, 658 A.2d 571 (1995). Other factors from which intent may be inferred include the presence or absence of a motive to kill; *State* v. *Stanley,* 223 Conn. 674, 680, 613 A.2d 788 (1992); any attempt on the part of the defendant to secure medical assistance for the victim; *State* v. *Sivri,* supra, 129; and evidence of consciousness of guilt, including conflicting statements to the police. *State* v. *Grant,* 219 Conn. 596, 604, 594 A.2d 459 (1991).

A review of the evidence presented at the defendant's trial, in light of the factors from which intent may be inferred, discloses that there was sufficient evidence to support beyond a reasonable doubt the panel's conclusion that the defendant intended to kill the victim.

The weapon used was a .38 caliber handgun, which the defendant admitted he owned. The gun was loaded with hollow point bullets. The defendant had sufficient motive because, in his statement to the police, he declared that the victim's refusal to take his friend to the hospital angered him, particularly because, in the defendant's words, "she knew who I was." The panel could also infer intent from the defendant's manner of using the gun: Rivera testified that, before shooting, the defendant readied or positioned himself behind the truck as it pulled away and pointed the gun. Indeed, the defendant stated that he cocked the hammer before firing.

In addition, " '[o]ne who uses a deadly weapon upon a vital part of another will be deemed to have intended the probable result of that act, and from such a circumstance a proper inference may be drawn in some cases that there was an intent to kill. . . .' " (Citations omitted.) *State* v. *Holley*, 174 Conn. 22, 26, 381 A.2d 539 (1977); see *State* v. *Mejia*, supra, 233 Conn. 225 (shooting victim's back considered vital area). The shot was fired when the victim was a short distance from the defendant and the bullet entered her upper back three and one-half inches from her spine.

An intent to kill may also be inferred from the defendant's failure to seek medical assistance for the victim. The defendant continued on to the bar to get transportation for Ramos and did not attempt to aid the victim even though, as he told the police, he saw the truck crash into several parked cars. Finally, the defendant manifested consciousness of guilt in his statements to the police by relating several variations of the event before admitting that he had shot the victim. Thus, construing the evidence in the light most favorable to sustaining the verdict, the panel reasonably concluded beyond a reasonable doubt that the defendant had the specific intent to kill.

Last the defendant contends that in light of the evidence of his intoxication the state did not produce sufficient evidence upon which the panel could have found beyond a reasonable doubt that he could form the specific intent to kill. "Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged . . . . As used in this section, 'intoxication' means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body." General Statutes § 53a-7. In order to prove intent, the state maintains the burden of disproving intoxication beyond a reasonable doubt. *State* v. *Turcio*, 178 Conn. 116, 132, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980); *State* v. *Crawford*, 172 Conn. 65, 69–70, 372 A.2d 154 (1976). Evidence of the defendant's intoxication, however, does not "automatically [negate] intent. . . . It is for the [trier of fact] to decide, after weighing all the evidence adduced at trial, whether a criminal defendant's intoxication rendered him incapable of forming the intent required to commit the crime with which he is charged." *State* v. *Vinal*, 198 Conn. 644, 658–59, 504 A.2d 1364 (1986).

The defendant's claim of intoxication is based on his statement to the police and the testimony of two witnesses that he had ingested a narcotic substance one or two hours before the shooting. A review of the evidence, however, reveals that there was sufficient evidence for the panel reasonably to conclude that the defendant was not so intoxicated as to have been incapable of forming the specific intent to kill. For instance, Gay testified that the defendant was in control and did not appear to be on drugs as he approached the truck. In addition, after Ramos was shot, the defendant imme-

diately held a towel to Ramos' face and helped him out of the house. Again, there was testimony that the defendant readied himself before firing. After the shooting, the defendant accompanied his friend to a bar to get transportation to a hospital. Thus, viewing the evidence in the light most favorable to sustaining the verdict, the panel reasonably could have concluded beyond a reasonable doubt that the defendant's intoxication did not prevent him from forming the necessary intent to kill.

The judgment is affirmed.

In this opinion the other judges concurred.