787 A.2d 256 (2001)
346 N.J. Super. 198
STATE of New Jersey, Plaintiff-Respondent,
v.
Juan Carlos VIERA, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 22, 2001.
Decided December 31, 2001.
*260 Ivelisse Torres, Public Defender, for appellant (Abby P. Schwartz, Assistant Deputy Public Defender, of counsel and on the brief).
John J. Farmer, Jr., Attorney General, for respondent (Kristen A. McKearney, Deputy Attorney General, of counsel and on the brief).
Before Judges PETRELLA, STEINBERG and ALLEY. *257 *258
*259 The opinion of the court was delivered by STEINBERG, J.A.D.
An Essex County grand jury returned Indictment No. 99-5-1855, charging defendant, Juan Carlos Viera, with first-degree murder of Senaida Rodriguez, N.J.S.A. 2C:11-3(a)(1)(2) (count one); first-degree attempted murder of Raymond Sierra, N.J.S.A. 2C:11-3, :5-1 (count two); third-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count three); and second-degree possession of a handgun with the purpose to use it unlawfully against the person of another, N.J.S.A. 2C:39-4(a) (count four). In addition, Essex County Indictment No. 99-5-1856, charged defendant with second-degree unlawful possession of a handgun by a convicted person, N.J.S.A. 2C:39-7(b).
A jury found defendant guilty of second-degree passion/provocation manslaughter, N.J.S.A. 2C:11-4(b)(2), as a lesser-included offense of count one, attempted murder of Sierra, and possession of a handgun without a permit. The jury acquitted defendant of possession of a weapon for an unlawful purpose. After the jury returned its verdict, defendant entered a plea of guilty to the charge of possession of a weapon by a convicted person. Because defendant possessed a firearm during the commission of the offenses, the Graves Act was implicated. N.J.S.A. 2C:43-6(c). Moreover, because defendant previously had been convicted of first-degree robbery while armed with a firearm, the judge granted the State's application for imposition of a mandatory extended term. N.J.S.A. 2C:43-7(c); N.J.S.A. 2C:44-3(d).[1] *261 In addition, because defendant caused the death of Rodriguez and attempted to kill Sierra with a deadly weapon, the judge concluded that the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, was implicated.[2] Accordingly, on count two, the judge ordered defendant to serve an extended fifty-year term with a forty-two year, five-month, and two-day period of parole ineligibility.[3] On count one, the judge ordered defendant to serve an extended twenty-year term, with a seventeen-year period of parole ineligibility, concurrent to the sentence imposed on count two.[4] The judge also imposed a concurrent five-year term on the charge of possession of a handgun without a permit to carry and a concurrent ten-year term on the conviction for possession of a handgun by a convicted person. Finally, the judge also imposed the appropriate monetary penalties, fees, and assessments. Defendant appeals. We affirm in part and reverse in part.
According to the State's proofs, in the late summer and into the early fall of 1998, defendant's girlfriend, Josefina Garcia, was pregnant with his child. During that time, defendant was also romantically involved with four or five other women, one of whom was named Yolanda.[5] Yolanda was simultaneously involved with Raymond Sierra, the victim on the attempted murder count, with whom she had a son. Defendant's relationship with Garcia ended after they had an argument regarding his relationship with Yolanda.
When Sierra learned of the affair between Yolanda and defendant, he became enraged. He discovered that Yolanda had taken their son to defendant's apartment. Sierra armed himself with a bat with the intent to physically confront and assault defendant. He went to defendant's apartment with three or four of his friends in an attempt to retrieve his son.
Defendant did not testify at the trial. However, he had given a statement to the police which was read to the jury. In his statement to the police, defendant said that he saw Sierra and his friends outside the apartment and drove away. He also said Sierra and his friends got in their car and followed him. He further stated that Sierra told him he wanted to talk to him, and that Sierra got out of his car with a baseball bat. Defendant also said "the four other guys got out of the car as well and they had pipes and bats." Defendant said he put his car in reverse and fled.
Defendant told the police that he telephoned his house and was advised by Yolanda that Sierra and his friends had broken into the apartment and had taken the child. She informed defendant that "[t]hey also took some things out of [the] apartment." According to defendant, he never returned to his apartment because he feared Sierra and his friends would kill him.
In his statement, defendant also said that while he was on the run, he maintained contact with Yolanda. At one point, *262 she told defendant that Sierra had a gun and was looking for him. She also informed defendant that the victim, Sierra, intended to cut defendant's face with a knife. Defendant told police "[he] stayed on the street" because he felt Sierra and his friends would kill him if he went home.
For the next week, defendant stayed with friends in Newark and then moved into an apartment. He and Yolanda terminated their affair and last spoke on or about September 8, 1998. Defendant and Sierra had no further contact until their deadly encounter on October 9, 1998. During this period, defendant had purchased a .380 caliber revolver claiming he feared for his life.
Defendant said on October 9, 1998, at approximately 2:00 p.m., he was driving his car and saw Garcia. He told her that he needed to speak with her. Garcia got in the car. He told her he wanted to resume his relationship with her. He said Sierra then drove up next to him in his car and started yelling at him. Sierra's vehicle had tinted windows. Sierra told Rodriguez, his passenger, to roll down the window. Defendant said Sierra "pulled up right next to [his] car and started calling [him] pendejo."[6] He said Sierra also called him a maricón[7] and told him to pull over and park his car.
Defendant said that because Yolanda had told him that Sierra had a gun and was looking for him, he pulled out his gun and fired one shot at Sierra. However, the shot hit Rodriguez, striking the right side of her head. The bullet entered her skull and lodged in her brain, killing her instantly. Defendant admitted that he did not see Sierra with a weapon before he fired the shot at him, and that he did not intend to hit anyone. He said he only intended to frighten Sierra. According to Sierra, defendant pointed the gun at him with his left arm straight out and his right hand resting on the left arm.
On this appeal, defendant raises the following arguments:
POINT I
THE FAILURE OF THE TRIAL COURT TO CHARGE ATTEMPTED PASSION/PROVOCATION MANSLAUGHTER AS A LESSER-INCLUDED OFFENSE OF THE ATTEMPTED MURDER OF RAYMOND SIERRA DEPRIVED DEFENDANT OF A FAIR TRIAL AND DUE PROCESS OF LAW. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. ART I, PARAS. 1, 10. (Not Raised Below).
POINT II
THE TRIAL COURT'S FAILURE TO CHARGE THE JURY ON THE LESSER-INCLUDED OFFENSES OF ASSAULT DEPRIVED DEFENDANT OF DUE PROCESS AND HIS RIGHT TO A FAIR TRIAL. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. ART I, PARAS. 1, 10. (Not Raised Below).
POINT III
THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY CONCERNING IMPERFECT SELF-DEFENSE AND HOW IT RELATES TO PASSION/PROVOCATION MANSLAUGHTER DENIED DEFENDANT A FAIR TRIAL AND DUE PROCESS OF LAW. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. ART I, PARAS. 1, 10 (Not Raised Below).
We first consider defendant's contention, raised for the first time on appeal, that the judge's charge to the jury was flawed in that it failed to include an instruction on *263 attempted passion/provocation manslaughter as a lesser-included offense of the attempted murder of Sierra. At a charge conference conducted prior to closing arguments, pursuant to R. 1:8-7(b), the judge advised the parties that he intended to charge passion/provocation manslaughter as a lesser-included offense of murder, as well as aggravated manslaughter and reckless manslaughter. Neither attorney voiced an objection. Significantly, defense counsel did not ask the judge to charge attempted passion/provocation manslaughter as a lesser-included offense of the attempted murder of Sierra. In addition, despite being given an opportunity to object to the charge as given, defense counsel did not object to the failure of the judge to charge attempted passion/provocation manslaughter. Ordinarily, the failure to object to the judge's charge to the jury before the jury retires constitutes a waiver of the right to "urge as error any portion of the charge to the jury or omissions therefrom." R. 1:7-2. However, R. 1:7-2 is expressly made subject to R. 2:10-2, the plain error rule.
Because defendant failed to object to the charge, we must determine if the omission amounts to plain error that was "clearly capable of producing an unjust result." R. 2:10-2; State v. Cooper, 151 N.J. 326, 385, 700 A.2d 306 (1997), cert. denied., 528 U.S. 1084, 120 S.Ct. 809, 145 L.Ed.2d 681 (2000); State v. Macon, 57 N.J. 325, 337-38, 273 A.2d 1 (1971). In considering whether an error in the charge in a criminal case amounts to plain error, our Supreme Court has defined plain error as "legal impropriety in the charge, prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court [which convinces] the court that of itself[,] the error possessed a clear capacity to bring about an unjust result." State v. Hock, 54 N.J. 526, 538, 257 A.2d 699 (1969), cert. denied, 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970). Clear and correct jury charges are essential to a fair trial, and the failure to provide them may constitute plain error. State v. Robinson, 165 N.J. 32, 40, 754 A.2d 1153 (2000). Because "[a] charge is a road map to guide the jury and without an appropriate charge a jury can take a wrong turn in its deliberations, ... the court must explain the controlling legal principles and the questions the jury is to decide." State v. Martin, 119 N.J. 2, 15, 573 A.2d 1359 (1990). Finally, because appropriate and proper charges to the jury are essential to a fair trial, "[e]rroneous instructions are poor candidates for rehabilitation as harmless, and are ordinarily presumed to be reversible error." State v. Afanador, 151 N.J. 41, 54, 697 A.2d 529 (1997).
The trial judge may "not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." N.J.S.A. 2C:1-8(e). Upon request, a defendant is entitled to a charge on a lesser-included offense if the evidence presents a rational basis on which the jury could acquit defendant of the greater charge and convict him of the lesser. State v. Brent, 137 N.J. 107, 116-17, 644 A.2d 583 (1994). On the other hand, when a defendant does not request the judge to charge a particular lesser-included offense, the judge need not sua sponte give that instruction unless the facts clearly indicate that the jury could find the defendant guilty of the lesser-included offense, rather than the charged offense. State v. Choice, 98 N.J. 295, 299, 486 A.2d 833 (1985). Thus, the trial court is not obliged to, on its own, meticulously sift through the entire record to see if some combination of facts and inferences might *264 rationally sustain a charge on a lesser-included offense. Ibid.
At trial, the State proceeded against defendant on the charge of the murder of Rodriguez under a theory of transferred intent. Under the doctrine of transferred intent, a defendant is not "relieved of responsibility for causing a result if the only difference between what actually occurred and what was designed, contemplated or risked, is that a different person or property was injured or affected." N.J.S.A. 2C:2-3(d). Thus, if "a defendant intentionally shoots at one victim but kills another, his punishment should be consistent with his intent and not his bad aim." State v. Worlock, 117 N.J. 596, 616, 569 A.2d 1314 (1990). Consequently, defendant's intent to kill or cause serious bodily injury to Sierra was transferred to Rodriguez.
At trial, the judge determined that there was sufficient evidence to instruct the jury as to passion/provocation manslaughter as a lesser-included offense regarding the death of Rodriguez. "[P]assion/provocation manslaughter is considered a lesser-included offense of murder: the offense contains all the elements of murder except that the presence of reasonable provocation, coupled with defendant's impassioned actions, establish a lesser culpability." State v. Robinson, 136 N.J. 476, 482, 643 A.2d 591 (1994). A homicide which would otherwise be a purposeful or knowing murder, that is committed in the heat of passion resulting from a reasonable provocation, is reduced to passion/provocation manslaughter, so long as the killing occurs before sufficient time has passed that an ordinary person in similar circumstances would have cooled off. N.J.S.A. 2C:11-4(b)(2); State v. Crisantos, 102 N.J. 265, 274-81, 508 A.2d 167 (1986).
Passion/provocation manslaughter has four elements: the provocation must be adequate; the defendant must not have had time to cool off between the provocation and the slaying; the provocation must have actually impassioned the defendant; and the defendant must not have actually cooled off before the slaying.
[State v. Mauricio, 117 N.J. 402, 411, 568 A.2d 879 (1990).]
The first two criteria are objective, the other two are subjective. Ibid. In determining whether to instruct a jury on passion/provocation manslaughter, the trial judge must view the evidence in the light most favorable to defendant. Id. at 412, 568 A.2d 879. In considering the first criterion, whether the provocation was adequate, the judge must determine whether a reasonable fact-finder could conclude that the loss of self-control was a reasonable reaction. Ibid. Stated another way, only "[i]f no jury could rationally conclude that the State had not proven beyond a reasonable doubt that the asserted provocation was insufficient to inflame the passions of a reasonable person" should the judge withhold the charge. Ibid. If the record contains evidence of passion/provocation, the State must prove beyond a reasonable doubt that defendant had not killed his victim in the heat of passion caused by a reasonable provocation. State v. Heslop, 135 N.J. 318, 324-27, 639 A.2d 1100 (1994); State v. Coyle, 119 N.J. 194, 221, 574 A.2d 951 (1990).
The second criterion requires the judge to determine whether a rational fact-finder could find that there was a reasonable doubt as to whether the perpetrator had a reasonable period of time to cool off before killing the victim. Mauricio, supra, 117 N.J. at 412, 568 A.2d 879. Although the trial judge may decline to charge passion/provocation manslaughter *265 "if there was undeniably a reasonable cooling-off period, it is well-nigh impossible to set specific guidelines in temporal terms." Id. at 412-13, 568 A.2d 879.
The third criterion, that the provocation must actually have impassioned the perpetrator, is subjective and "should almost always be left to the jury." Id. at 413, 568 A.2d 879. Indeed, once it is determined that there is a jury question as to whether the provocation was reasonable, the judge "should rarely withhold instructions on the basis that the defendant was not actually provoked." Ibid. It is the very rare case in which it would be appropriate to conclude "that although the passions of a reasonable person might have been so aroused as to cause loss of control, it would be irrational for a jury to conclude that the defendant was in fact so provoked." Ibid.
The fourth criterion, whether the perpetrator actually did cool off, is also subjective. Ibid. Again, this subjective criterion should ordinarily be submitted to the jury. Ibid.
"Passion/provocation manslaughter is an intentional homicide committed under extenuating circumstances that mitigate the murder." Robinson, supra, 136 N.J. at 481, 643 A.2d 591. Our law regarding criminal attempts is designed "to punish one who acts with the level of culpability required to commit a crime regardless of whether the intended result occurs." Id. at 483-84, 643 A.2d 591. Because passion/provocation manslaughter involves a purpose to kill, and the attempt statute, N.J.S.A. 2C:5-1, applies to all intentional crimes, our Supreme Court has held that the Code of Criminal Justice contemplates the crime of attempted passion/provocation manslaughter. Id. at 486-88, 643 A.2d 591. Recognition of that crime for the purpose of mitigating an intention to kill arising out of a reasonable provocation punishes the attempt and ensures "that one who acts with a specified level of culpability and the required criminal purpose is punished for that behavior, regardless of whether the criminal result is achieved." Id. at 488, 643 A.2d 591. Thus, the purposes underlying the crimes of passion/provocation manslaughter and criminal attempt are harmonized. Ibid. Consequently, the Court held that attempted passion/provocation manslaughter is a lesser-included offense of attempted murder. Id. at 488-89, 643 A.2d 591.
Guided by these principles of law, we conclude that the trial judge erred in failing to sua sponte charge attempted passion/provocation manslaughter as a lesser-included offense of the charge of attempted murder of Sierra. Once the judge decided to charge passion/provocation manslaughter regarding the killing of the unintended victim, logic and consistency required that the judge also charge attempted passion/provocation manslaughter as a lesser-included offense regarding defendant's purpose to kill Sierra, his intended victim. Here, the failure to charge attempted passion/provocation manslaughter led to the anomalous result that concerned the Court in Robinson. As the Court there observed, to hold otherwise could lead to an anomalous result where "[a] defendant found to have killed in the heat of passion based on reasonable provocation would be guilty of a second-degree offense, while a defendant who in the heat of passion attempted but failed to kill the victim would be guilty of a first-degree offense." Id. at 488, 643 A.2d 591.
If the crime of attempted passion/provocation manslaughter were not recognized, an unsuccessful defendant would be sentenced more harshly than one who actually achieved the level of harm intended. Ibid. This is precisely what happened *266 in this case. Defendant was punished more harshly for the attempted killing of Sierra than he was for the killing of Rodriguez. Moreover, the difference was enormous. On the charge of attempted murder, the judge sentenced defendant to fifty years of imprisonment with an eighty-five percent period of parole ineligibility, which is forty-two years, five months and two days. On the manslaughter conviction, the judge sentenced defendant to twenty years of imprisonment with an eighty-five percent period of parole ineligibility, which is seventeen years. Particularly in light of the fact that the jury found defendant guilty of the lesser-included offense of passion/provocation manslaughter regarding the death of Rodriguez, we conclude that the failure to charge attempted passion/provocation manslaughter as a lesser-included offense of attempted murder of Sierra was clearly capable of producing an unjust result, necessitating a reversal of the conviction for attempted murder.
We recognize the State contends that there was insufficient evidence in the record to justify a charge for passion/provocation manslaughter. Thus, the State suggests that the judge did not err in failing to charge attempted passion/provocation manslaughter. However, as previously noted, the State voiced no objection when the judge indicated, at the charge conference, that he intended to charge passion/provocation manslaughter. Moreover, the State voiced no objection to the charge as given. Consequently, in the absence of an objection at the time of trial, we conclude that the State waived its right to urge as error the judge's decision to charge passion/provocation manslaughter. R. 1:7-2. We would be hard pressed to apply R. 2:10-2, the plain error rule, and conclude that the error was not clearly capable of producing an unjust result in light of the fact that the jury found defendant guilty only of the lesser-included offense.
Furthermore, in a close call, we are satisfied that the judge did not err in charging the lesser-included offense. We recognize that ordinarily words alone, no matter how offensive or insulting, do not constitute adequate provocation to reduce murder to manslaughter. Crisantos, supra, 102 N.J. at 274, 508 A.2d 167. In addition, although mutual combat under certain circumstances may constitute adequate provocation and reduce murder to manslaughter, the contest must be waged on equal terms. Id. at 274-75 & n. 8, 508 A.2d 167. Thus, the offense is not manslaughter where the defendant alone is armed. Id. at 274, 508 A.2d 167.
Under the facts here presented, the circumstances created a rational basis for the judge to charge, and the jury to find, passion/provocation manslaughter. We reject the State's argument that we should view the shooting in isolation and confine ourselves to the date of the killing. A continuing course of ill treatment, which the accused reasonably believes is likely to continue, may constitute adequate provocation. State v. Erazo, 126 N.J. 112, 124-25, 594 A.2d 232 (1991); State v. Kelly, 97 N.J. 178, 218-19, 478 A.2d 364 (1984); State v. Guido, 40 N.J. 191, 210-11, 191 A.2d 45 (1963); State v. Vigilante, 257 N.J.Super. 296, 304-06, 608 A.2d 425 (App.Div.1992). We acknowledge that these cases involved a continued course of physical abuse involving persons in a familial relationship. However, we decline to hold that a familial relationship is necessary in order to permit the trial court to consider whether a course of ill-treatment is sufficient to create a jury question on adequate provocation.
Here, in considering the totality of the circumstances, as we should, we determine *267 that Sierra's course of conduct was sufficient to present a jury question on adequate provocation. We consider the facts that there had been a prior confrontation between Sierra and defendant approximately one month earlier in which Sierra and his friends confronted defendant with bats and pipes. Moreover, both defendant and Sierra were dating Yolanda. Defendant told police that he stayed away from his apartment during that one-month period because he feared Sierra would kill him. Yolanda told defendant that Sierra had a gun and was looking for him. On another occasion, she told defendant that Sierra threatened to cut defendant's face with a knife. On the day of the incident, defendant was confronted by Sierra, who shouted at him to pull over. Finally, on the date of the incident, Sierra uttered profanities at defendant.[8] While we agree that defendant had adequate time to cool off after the early September incident, we conclude that the judge properly considered the intervening events in determining whether to charge passion/provocation manslaughter. Under the totality of the circumstances here presented, we are satisfied that the judge did not err in giving the charge.
On remand, at its election, the State may choose to accept a conviction for attempted passion/provocation manslaughter on count two. A trial court may mold a verdict by entering a judgment of conviction for a lesser included offense "where the jury verdict necessarily constitutes a finding that all the elements of the lesser included offense have been established and where no prejudice to the defendant results." State v. Greenberg, 154 N.J.Super. 564, 567-68, 382 A.2d 58 (App.Div.1977), certif. denied, 75 N.J. 612, 384 A.2d 842 (1978); accord State v. Farrad, 164 N.J. 247, 266, 753 A.2d 648 (2000). Thus,
[a] guilty verdict may be molded to convict on a lesser-included offense even if the jury was not instructed on that offense if "(1) defendant has been given his day in court, (2) all the elements of the lesser-included offense are contained in a more serious offense, and (3) defendant's guilt of the lesser-included offense is implicit in, and part of, the jury verdict."
[Farrad, supra, 164 N.J. at 266, 753 A.2d 648 (quoting State v. Hauser, 147 N.J.Super. 221, 228, 371 A.2d 89 (App. Div.), certif. denied, 75 N.J. 27, 379 A.2d 258 (1977)).]
Here, defendant was given his day in court. Moreover, his guilt of passion/provocation manslaughter is implicit in the jury's determination that it was his purpose to kill Sierra. We recognize that all of the elements of the lesser included offense are not included in the more serious offense because there was no finding of passion or provocation regarding the attempt on Sierra. However, the jury found those factors to be present regarding Rodriguez. Indeed, the jury found that defendant intended to kill Sierra and that intent was transferred to the shooting of Rodriguez. Defendant would suffer no prejudice from this result. After all, again, the jury found beyond a reasonable doubt that he intended to kill Sierra. The *268 failure to charge passion/provocation does not taint that determination. The State should not be required to again prove that defendant's purpose was to kill Sierra. A conviction for attempted passion/provocation manslaughter allows defendant to mitigate his guilt. That is all he is entitled to.
We note that on remand, if the State elects to accept a conviction for attempted passion/provocation manslaughter, the judge may recraft the sentence, provided the ultimate sentence imposed does not increase the aggregate sentence originally imposed. State v. Rodriguez, 97 N.J. 263, 277, 478 A.2d 408 (1984). Defendant may be resentenced without offending constitutional principles of double jeopardy, so long as the appropriate sentencing guidelines are followed and the aggregate sentence is not increased. Ibid.
For the sake of completion, and for guidance of the parties on remand, we have carefully considered the record, the briefs filed, and the applicable law, and conclude that the arguments raised by defendant in Points II and III regarding his contentions that the judge erred in failing to sua sponte charge the jury on the lesser-included offenses of assault and that the judge failed to sua sponte instruct the jury concerning imperfect self-defense and how it relates to passion/provocation manslaughter, are without sufficient merit to warrant discussion. See R. 2:11-3(e)(2).
We reverse defendant's conviction on count two. The other convictions are affirmed. We remand for further proceedings consistent with this opinion.
NOTES
[1] The judge also granted the State's application for imposition of a discretionary term in light of defendant's prior record, concluding that he was a persistent offender. N.J.S.A. 2C:44-3(a).
[2] The judge also denied the State's application for a life sentence without parole pursuant to the Three Strikes Act, N.J.S.A. 2C:43-7.1.
[3] For Graves Act purposes, the judge also sentenced defendant to fifty years of imprisonment, with twenty-five years to be served without parole.
[4] For Graves Act purposes, the judge noted that defendant would be ineligible for parole for a period of ten years.
[5] There is no reference in the record to Yolanda's last name.
[6] The Spanish equivalent of asshole or motherfucker.
[7] The Spanish street term for homosexual. See infra note 8.
[8] Indeed, a Connecticut court has noted, with apparent approval, that the trial judge allowed "testimony to the effect that maricon is `an extremely insulting word to use in Spanish. It's stronger in Spanish than the word faggot is in English.'" State v. Gonzalez Rivera, 48 Conn.App. 784, 713 A.2d 847, 853 n. 4, certif. denied, 245 Conn. 923, 717 A.2d 238 (C1998). In fact, "[t]he defendant's expert witness testified on cross-examination that his opinion on the defendant's emotional state at the time of the shooting would be different if the victim was found not to have called defendant a maricon shortly before the shooting." Id. at 853, n. 5.